# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

JUANITA J. SECATERO,

      Plaintiff,

  vs.                                      Civ. No. 19-87 SCY

ANDREW SAUL, Commissioner of Social
Security,[1]

      Defendant.

## MEMORANDUM OPINION AND ORDER[2]

**THIS MATTER** is before the Court on the Social Security Administrative Record filed April 4, 2019, Doc. 13, in support of Plaintiff Juanita J. Secatero's Complaint, Doc. 1, seeking review of the decision of Defendant Andrew Saul, Commissioner of the Social Security Administration, denying Plaintiff's claim for disability insurance benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. § 401 *et seq*. On June 25, 2019, Plaintiff filed her Motion To Reverse And Remand For A Rehearing With Supporting Memorandum. Doc. 18. The Commissioner filed a Brief in Response on September 25, 2019, Doc. 22, and Plaintiff filed a Reply on October 15, 2019, Doc. 27. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g) and § 1383(c). Having meticulously reviewed the entire record and the applicable law and being fully advised in the premises, the Court finds the Motion is well taken and is **GRANTED**.

---

[1] Andrew Saul was sworn in as Commissioner of the Social Security Administration on June 17, 2019 and is automatically substituted as a party pursuant to Federal Rule of Civil Procedure 25(d).

[2] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings and to enter an order of judgment. Docs. 4, 8, 9.

## Background and Procedural Record

Claimant Juanita J. Secatero suffers from the following severe impairments: migraine headaches; diabetes mellitus, type II; mild osteoarthritis; right shoulder disorder; posttraumatic stress disorder; anxiety; and depression. Administrative Record ("AR") at 17. She alleges that she became disabled as of January 1, 2014. AR 13. She has a high school degree, completed two years of college, and earned a nursing assistance certificate that expired in 1993. AR 131-32, 357. She has past work as a home attendant, leasing agent, employment interviewer, and personnel clerk. AR 132-33.

Ms. Secatero filed a claim of disability under Title XVI on July 21, 2015 and a claim under Title II on August 25, 2015. AR 165, 166. Her applications were initially denied on November 18, 2015, AR 165-66, and upon reconsideration on April 28, 2016, AR 195-96. Administrative Law Judge ("ALJ") Cole Gerstner conducted a hearing on October 11, 2017. AR 91. Ms. Secatero appeared in person at the hearing with attorney representative Michael Armstrong. AR 108. The ALJ took testimony from Ms. Secatero and an impartial vocational expert ("VE"), Karen N. Provine. *Id.*

On January 29, 2018, ALJ Gerstner issued an unfavorable decision. AR 13. The Appeals Council denied review on December 1, 2018, noting that Ms. Secatero submitted additional evidence but declining to consider it. AR 1-2. The ALJ's decision is the Commissioner's final decision for purposes of judicial review. Ms. Secatero proceeded to federal court on January 30, 2019. Doc. 1. Because the parties are familiar with Ms. Secatero's medical history, the Court reserves discussion of the medical records relevant to this appeal for its analysis.

## Applicable Law

    A.    <u>Disability Determination Process</u>

An individual is considered disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance benefits); *see also id.* § 1382a(3)(A) (pertaining to supplemental security income disability benefits for adult individuals). The Social Security Commissioner has adopted the familiar five-step sequential evaluation process ("SEP") to determine whether a person satisfies the statutory criteria as follows:

    (1)    At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[3] If the claimant is engaged in substantial gainful activity, she is not disabled regardless of her medical condition.

    (2)    At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s). If the claimant does not have an impairment(s) or combination of impairments that is severe and meets the duration requirement, she is not disabled.

    (3)    At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement. If so, a claimant is presumed disabled.

    (4)    If, however, the claimant's impairments do not meet or equal in severity one of the listings described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform her "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the

---

[3] Substantial work activity is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). Work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before. *Id.* Gainful work activity is work activity that you do for pay or profit. 20 C.F.R. §§ 404.1572(b), 416.972(b).

> most [claimant] can still do despite [her physical and mental] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3), 416.945(a)(3). Second, the ALJ determines the physical and mental demands of claimant's past work. Third, the ALJ determines whether, given claimant's RFC, the claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled.
>
> (5) If the claimant does not have the RFC to perform her past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); 20 C.F.R. § 416.920(a)(4) (supplemental security income disability benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 801 (10th Cir. 1991).

B.  Standard of Review

This Court must affirm the Commissioner's denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Casias*, 933 F.2d at 800-01. In making these determinations, the Court "neither reweigh[s] the

4

evidence nor substitute[s] [its] judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Substantial evidence "is 'more than a mere scintilla.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted).

A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record," *Langley*, 373 F.3d at 1118, or "constitutes mere conclusion," *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The agency decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005). Therefore, although an ALJ is not required to discuss every piece of evidence, "the record must demonstrate that the ALJ considered all of the evidence," and "the [ALJ's] reasons for finding a claimant not disabled" must be "articulated with sufficient particularity." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). But where the reviewing court "can follow the adjudicator's reasoning" in conducting its review, "and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The court "should, indeed must, exercise common sense." *Id.* "The more comprehensive the ALJ's explanation, the easier [the] task; but [the court] cannot insist on technical perfection." *Id.*

**Analysis**

In support of her Motion to Remand, Ms. Secatero raises three main arguments. First, she argues that the Appeals Council should have considered her additional evidence. Doc. 18 at 14-18. Second, she argues error in the ALJ's evaluation of the opinion of her treating psychiatrist, Dr. Richard Barendsen. Doc. 18 at 18-23. Finally, she argues that the ALJ was required to develop the record to clarify the medical evidence related to her seronegative arthritis. Doc. 18 at 23-25. The Court agrees with Ms. Secatero that the additional evidence submitted to the Appeals Council was new, material, and temporally relevant. The Court will not address Ms. Secatero's remaining claims of error because they may be affected by the ALJ's treatment of this case on remand. *Wilson v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

**I.      Dr. Laughter's Opinion and the Additional Evidence**

During Ms. Secatero's request for review, she submitted three sets of additional evidence to the Appeals Council. AR 54, 73, 85. On appeal, she narrows her claim of error to a set of medical records from the Indian Health Service ("IHS") dated November 15, 2015 through January 8, 2018. Doc. 18 at 14; AR 74-84. These are treatment records from an IHS psychiatrist, Dr. Richard Laughter, who also issued several medical opinions with the conclusion that Ms. Secatero is disabled and cannot work.

On December 17, 2015, Dr. Laughter completed a medical assessment of ability to do work-related activities (mental) ("MSS"). The form instructs Dr. Laughter to consider the patient's medical history from 2015 to current examination date. AR 569. The form is broken down into the familiar nonexertional categories (understanding and memory; sustained concentration and persistence; social interaction; and adaptation). AR 569-70. Under "understanding and memory," Dr. Laughter assessed one moderate and two marked limitations. AR 569. Under "concentration and persistence," Dr. Laughter assessed three moderate

limitations and five marked limitations. AR 569. Under "social interaction," he assessed two moderate and three marked limitations. Under adaptation, he assessed two moderate and two marked limitations. AR 1346. The ALJ described these forms and criticized them because they have "slight" as the least amount of limitation Dr. Laughter could opine that Ms. Secatero has. AR 28. He likewise criticized the claimant's attorney for submitting the form in August of 2017 when the form is dated December of 2015. Finally, he noted "that the evidence of record **lacks** treatment records from Dr. Laughter." AR 28.

Also on December 17, 2015, Dr. Laughter completed listing forms for 12.04 Affective Disorders and 12.06 Anxiety-Related Disorders, finding that Ms. Secatero satisfied the criteria for both listings. AR 571-72. The ALJ explained that these are criteria for the "old" listings and are no longer applicable. AR 28. "Finally, as noted above, the evidence of record **lacks** treatment records from Dr. Laughter, while the evidence of record further lacks information on the claimant having any episodes of decompensation." AR 28.

Later in his opinion, the ALJ declined to incorporate Dr. Laughter's opined limitations into Ms. Secatero's RFC, giving them "[l]ittle weight." AR 33. "[D]espite being an acceptable medical source under the regulations, the medical evidence of record lacks treatment records from him, so it is unclear what, if any, relationship he had with the claimant." AR 33. The ALJ found Dr. Laughter's statements "internally inconsistent and only partially consistent with objective treatment records," and that they were "undermined by the claimant's reports of going to social events and her taking steps to become a foster parent." AR 33.

The additional records Ms. Secatero submitted to the Appeals Council document two visits to Dr. Laughter, one of which is contemporaneous with his MSS opinion. On November 5, 2015, Dr. Laughter noted Ms. Secatero's report of being depressed and anxious. He rated her

mood as 8/10 and anxiety as 7/10 (with ten being severe). Her interest, self-esteem, energy, and concentration were low. Her appetite was "up and down." She "has occas[]ional auditory hallucinations, brief, and no command." He assessed that she "continues with severe [d]epression[] and anxiety" and "has episodic PTSD." He concluded that "[s]he is unable to work due to the severity of her medical condition." AR 74. He noted she had a "[h]istory of near panic to panic" and her anxiety is "[g]eneralized and situational." He reported that she overdosed on amitriptyline and was inpatient at UNM for two weeks for her suicide attempt. She denied abuse as a child and reported being raped as an adult. AR 75. He performed a mental status exam, which was normal other than her mood (anxious) and her suicidal ideation (passive without plan). AR 75-76. The notes also indicate that there was likely a prior visit for which notes have not been produced. AR 74.

The other note is dated May 19, 2016. Again, Dr. Laughter noted Ms. Secatero's report that her mood was "sad, depressed, crying, anxious." He rated her mood as 5/10 and anxiety as 2/10. She reported isolation, low self-esteem, low energy, "up and down" concentration, and low appetite. She denied psychosis and expressed occasional passive suicidal ideation. AR 77. Her mental status exam was normal other than her mood (anxious) and her suicidal ideation (passive without plan). AR 77-78. She reported headaches when taking her mood stabilization medication. AR 78.

The Appeals Council found that "this evidence does not show a reasonable probability that it would change the outcome of the decision" and did not exhibit it. AR 2.

## II.     The Standard of Review Is De Novo.

Under its regulations, the Appeals Council will only review a case if, among other things, it receives additional evidence "that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence

would change the outcome of the decision." 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5).[4] Whether evidence qualifies for consideration by the Appeals Council under this standard is a question of law subject to *de novo* review. *Krauser v. Astrue*, 638 F.3d 1324, 1328 (10th Cir. 2011). The "general rule of *de novo* review permits [the Court] to resolve the matter and remand if the Appeals Council erroneously rejected the evidence." *Id.* (citing *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004)). If the evidence does qualify and the Appeals Council erroneously rejected it, the case is remanded to an ALJ for a rehearing with the new evidence. *Id.* "If the evidence does not qualify, the Appeals Council does not consider it and it plays no role in judicial review." *Id.* The Court will refer to this as the "de novo" standard of review.

The standard of review changes significantly, however, if the Appeals Council *did* consider and exhibit the new evidence, but nonetheless determined that substantial evidence supported the ALJ's decision. In such a case, without consideration of the three requirements for qualification, the Court would then perform its *own* substantial-evidence review of the entire record, taking into account the new evidence that neither the ALJ nor the Appeals Council ever analyzed. *Padilla v. Colvin*, 525 F. App'x 710, 712 n.1 (10th Cir. 2013); *Krauser*, 638 F.3d at 1328; *Vallejo v. Berryhill*, 849 F.3d 951, 956 (10th Cir. 2017). The Court will refer to this as the "substantial-evidence review" standard.

---

[4] These regulations were recently amended. *See* Ensuring Program Uniformity at the Hearing and Appeals Council Levels of the Administrative Review Process, 81 Fed. Reg. 90,987, 2016 WL 7242991 (Dec. 16, 2016) (effective January 17, 2017, with compliance required after May 1, 2017). The amendments added that the Appeals Council will only consider additional evidence if the claimant shows good cause for not informing the ALJ about the new evidence and submitting it to him or her. *Id.* §§ 404.970(a)(5), 416.1470(a)(5). The Commissioner does not argue, however, that Ms. Secatero was required to demonstrate "good cause" for not submitting the evidence earlier. Therefore, the Court need not consider whether this standard applies to the present case.

Advocating for the "substantial-evidence review" standard, the Commissioner argues that the Appeals Counsel considered the evidence and the Court therefore does not need to perform an analysis of whether it qualifies for consideration as new, material, and temporally relevant. Doc. 22 at 19 n.7. The language in the Appeals Council's order is unclear and does not indicate whether the Appeals Council "considered" the additional evidence. AR 1-2. The Appeals Council did, however, state: "We did not exhibit this evidence." AR 2.[5] As a result, the Court determines that the Appeals Council did not accept the additional evidence into the record.

The Commissioner suggests that the Appeals Council "considered" the additional evidence because it "found that 'this evidence does not show a reasonable probability that it would change the outcome of the ALJ's decision.'" Doc. 22 at 19 n.7 (alterations omitted). This argument, however, fails because the Appeals Council determines reasonable probability *before* it decides whether it will "consider" the additional evidence as part of its substantial-evidence review of the ALJ's decision. Thus, assessing whether reasonable probability exists does not equate to performing the review that the social security regulations contemplate. As the Tenth Circuit found when considering a similar question in an unpublished decision, subsection (a)(5) consists of "predicate requirements . . . to warrant consideration" of the additional evidence.

---

[5] Although Ms. Secatero correctly urges application of the "de novo" standard of review (Doc. 18 at 14 & Doc. 27 at 2-3), for some reason she suggests that the Appeals Council did in fact exhibit the additional evidence because it is part of the Administrative Record filed with this Court (AR 74-84). Doc. 18 at 14. That is wrong. An "exhibit" is "any evidence upon which a finding and decision are based," whether before an ALJ or the Appeals Council. HALLEX, I-4-2-20, https://www.ssa.gov/OP_Home/hallex/I-04/I-4-2-20.html. If the Appeals Council had exhibited the evidence, it would appear in the "Medical Records" section at the end of the Administrative Record. Because the Appeals Council did *not* exhibit it, the records were "included in the administrative record" but treated "as procedural documents, similar to the hearing decision or AC denial notice." HALLEX, I-4-2-20. Thus, the additional exhibits are not part of the record of medical evidence before the Court. This indicates that the only question properly before the Court is whether the additional exhibits should be part of the record.

*Padilla v. Colvin*, 525 F. App'x 710, 712 (10th Cir. 2013). Therefore, "the Appeals Council's dismissal of the additional evidence's import [under a subsection (a)(5) criterion] indicates that it ultimately found the evidence did not qualify for consideration at all." *Id*. "This case therefore boils down to whether the Appeals Council should have considered the additional evidence," under the de novo standard of review. *Id.* Based on this unpublished but influential Tenth Circuit decision, the Court rejects the Commissioner's argument that the Appeals Council "considered" the evidence, and proceeds to review de novo whether the evidence is new, material, and temporally relevant.

### III. The Appeals Council Should Have Considered the Additional Evidence.

#### A. The evidence is new.

Evidence is new "if it is not duplicative or cumulative." *Threet*, 353 F.3d at 1191. The additional evidence consists of treatment notes from treating psychiatrist Dr. Laughter. AR 74-78. As the ALJ found, "the medical evidence of record lacks treatment records from [Dr. Laughter], so it is unclear what, if any, relationship he had with the claimant." AR 33. Because the additional evidence clarifies the answer to an open question in the record, the Court finds that the treatment records from Dr. Laughter are not duplicative or cumulative.

#### B. The evidence is temporally relevant.

Evidence is chronologically pertinent if it relates to the time period adjudicated by the ALJ; *i.e.*, the period on or before the date of the ALJ's decision. *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004). The treatment records from Dr. Laughter are dated November 5, 2015 and May 19, 2016. AR 74-78. Ms. Secatero alleged disability beginning January 2014, AR 13, and ALJ Gerstner issued his decision in February 2018, AR 35. Thus, the records are temporally relevant to the decision.

11

C. The evidence is material.

Evidence is material "if there is a reasonable possibility that it would have changed the outcome." *Threet*, 353 F.3d at 1191.[6] The Court finds a reasonable possibility that the additional evidence could have changed the outcome below. Although Dr. Laughter's treatment notes are not comprehensive and only documented two visits, a reasonable possibility exists that they would have allayed the ALJ's concern that, although Dr. Laughter was an "acceptable medical source,"[7] he lacked a treatment relationship with Ms. Secatero and thus was not a treating physician at all. AR 28, 33. Nor did the ALJ analyze Dr. Laughter's opinion under the two-step "treating physician rule." *Id.*[8] The new treatment records demonstrate that Dr. Laughter *is* a

---

[6] The Tenth Circuit has not revisited its definition of materiality as involving a "reasonable *possibility*" after the 2017 amendments added the phrase "reasonable *probability*" to the relevant regulations. 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5) (emphasis added). In this case, neither party contends that the outcome depends on which standard the Court applies. For the reasons described above, the Court concludes that the evidence meets both standards.

[7] For claims filed before March 27, 2017, as the present claim is, medical opinions are classified into two different categories: "acceptable medical sources" and "other sources." "Acceptable medical sources" are licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. SSR 06-03p, 2006 WL 2329939, at *1; SSR 96-2p, 2017 WL 3928298. "Other medical sources" include nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists. SSR 06-03p, 2006 WL 2329939, at *2; SSR 96-2p, 2017 WL 3928298.

[8] A unique two-step rule applies to the opinions of treating physicians (acceptable medical sources who provide or have provided the claimant with medical treatment and who have an ongoing relationship with the claimant). First, the ALJ must determine whether the opinion is entitled to "controlling weight." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." *Id.* (internal quotation marks omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." *Id.* If it is not given controlling weight, "at the second step in the analysis, the ALJ must make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the cited regulations for this

treating physician who saw Ms. Secatero at least once (and possibly more than once) by the time he rendered his opinion. As such, his opinion is entitled to more weight than a physician who did not see Ms. Secatero. 20 C.F.R. § 404.1527(c)(1), (2). In addition, the ALJ found that the record lacked evidence to support Dr. Laughter's opinion that Ms. Secatero had suffered *any* episodes of decompensation, whereas Dr. Laughter's notes mention that she was hospitalized two weeks for a suicide attempt. AR 75, 77.[9] The ALJ's rejection of Dr. Laughter's opinion was based, at least in major part, on a lack of treatment records from Dr. Laughter, so the ALJ clearly viewed the records as material. The ALJ's repeated reliance on the absence of records such as these thus supports the Court's conclusion that their current presence is material. *See Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003) (additional evidence showing that the claimant had further medical treatment undermined the ALJ's conclusion that her disability had ended); *Padilla v. Colvin*, 525 F. App'x 710, 712-13 (10th Cir. 2013) (additional evidence in the form of a psychological report documenting nonexertional limitations could reasonably have changed the outcome if the RFC had taken the limitations into account). Had the ALJ considered this additional medical evidence and had that evidence caused the ALJ to incorporate Dr. Laughter's opinion about Ms. Secatero's limitations into the RFC, the outcome of her application for benefits likely would have changed. The Court therefore reverses and remands so the ALJ can consider this additional medical evidence as part of further proceedings.

---

particular purpose, for the weight assigned." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011).

[9] "'Episodes of decompensation may be demonstrated by an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation.'" *Davison v. Colvin*, 596 F. App'x 675, 678 (10th Cir. 2014) (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C)(4)). "They 'may be inferred from medical records showing significant alteration in medication or documentation of the need for a more structured psychological support system (e.g., hospitalizations, placement in a halfway house, or a highly structured and directing household).'" *Id.* (alterations omitted).

## Conclusion

For the reasons stated above, Ms. Secatero's Motion To Reverse And Remand For A Rehearing With Supporting Memorandum, Doc. 18, is **GRANTED**.

_____
**STEVEN C. YARBROUGH**
**United States Magistrate Judge**
**Presiding by Consent**